**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
_____
                                 :
FRANKLIN CURRIE,                 :
                                 :       Civil Action No.
            Petitioner,          :       08-1121 (RMB)
                                 :
      v.                         :
                                 :       M E M O R A N D U M
J. GRONDOLKSY,                   :       O R D E R
                                 :
            Respondent.          :
_____:
```

This matter comes before the Court upon Petitioner FRANKLIN CURRIE's (hereinafter "Petitioner") filing of his petition ("Petition") seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, see Docket Entry No. 1, and it is appearing that:

I.  Petitioner, a federal inmate currently confined at F.C.I. Fort Dix ("Fort Dix"), has been sentenced to a thirty-seven-month term of imprisonment. See id. at 3. Subject to application of good time credits, Petitioner's projected release date is January 29, 2009. See id.

II. Shortly prior to his filing of the Petition, Petitioner made an inquiry with his unit team members at Fort Dix as to the time of his transfer to a community correctional center ("CCC"), and was informed that such transfer will take place seventy-three days prior to his projected release date. See id. Allegedly, the unit team members explained to Petitioner

Page -1-

      that his CCC period would be 73 days because "the ten percent of his 37 month[] sentence does not equal to six month[s]." See id.  Furthermore, Petitioner alleges that, upon his explanation that he is in "need [of] six months [of] CCC [because these six months would] allow him to seek an employment and save sufficient money to secure an apartment in the New York area," the unit team members "denied [his request for enlargement of the CCC period] without further consideration [or] investigation of his needs."  See id.

III. Relying on Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), Petitioner asserts that this decision was a violation of federal law.  See id. at 3-4.

IV. The Bureau of Prisons ("BOP") has the authority under § 3621(b) to determine the location of an inmate's imprisonment. The statute not only grants the BOP placement authority, but also lists factors for consideration in making placement and transfer determinations.  The statute provides as follows:

> Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
> (1)  the resources of the facility contemplated;
> (2)  the nature and circumstances of the offense;
> (3)  the history and characteristics of the prisoner;

Page -2-

>     (4) any statement by the court that imposed the
>         sentence -
>         (A) concerning the purposes for which the
>             sentence to imprisonment was determined
>             to be warranted; or
>         (B) recommending a type of penal or
>             correctional facility as appropriate; and
>     (5) any pertinent policy statement issued by the
>         Sentencing Commission. . . .

18 U.S.C. § 3621(b).  However, the grant of authority in § 3621(b) must be read in conjunction with § 3624(c), which obligates the BOP to prepare prisoners for community re-entry by, <u>inter alia</u>, placing them in community confinement.  That provision reads as follows:

> Pre-release custody. The Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  Such conditions may include a [CCC].

18 U.S.C. § 3624(c).  In light of these provisions, the Court of Appeals held that the BOP's regulations regarding placement in a CCC (directing a mechanical "ten-percent-of-sentence, not to exceed six month" calculation) were invalid because they did not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics or any statement by the sentencing court concerning a placement recommendation and the purposes for the

sentence. See Woodall, 432 F.3d at 244.[1] The express holding of Woodall is that "the BOP may transfer an inmate to a CCC or like facility *prior* to the last six months or ten percent of his sentence." Id. at 251 (emphasis supplied). The Woodall court reminded the BOP that, "[i]n exercising its discretion . . . , the BOP must consider the factors set forth in § 3621(b)." Id. However, the court was equally careful to note that the fact "that the BOP may assign a prisoner to a CCC does not mean that it must." Id. Rather, the BOP is required "to consider - in good faith" whether to transfer an inmate to a CCC. See id.

V. Here, the facts asserted by Petitioner do not add up. According to the Petition, Petitioner's team unit members informed Petitioner that he would be transferred to a CCC seventy-three days prior to his release. The period of seventy-three days is, however, *less* than ten percent of thirty-seven months, i.e., less than the period directed by the regulations invalidated in Woodall.[2] Hence, it appears

---

[1] Since, according to the text and history of § 3621, these factors must be taken into account, the regulations were deemed invalid because the BOP could not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations. See Woodall, 432 F.3d at 244.

[2] The Court's own arithmetical exercises indicate that ten percent of thirty-seven months is 113 days, with two days margin of

      that the ten percent calculation can be related, at best, to Petitioner's sentence after it is decreased by applicable good time credits.[3] However, no statement made in the Petition indicates that Petitioner was given a CCC period equal to ten percent of his sentence, as decreased by applicable good time credits: all that Petitioner asserts is that he was not given the six month CCC period that he desires. <u>See</u> Pet. at 3. Therefore, the Petition may be read as stating that Petitioner was actually allocated a CCC period exceeding ten percent of his sentence, as decreased by applicable good time credits, even if this period is only of seventy-three days.[4]

VI. Moreover, the nature of Petitioner's reliance on <u>Woodall</u> appears equally unclear, since the factors articulated in § 3621(b) (<u>i.e.</u>, the resources of the anticipated CCC, the nature and circumstances of Petitioner's offense, his history and characteristics, any statement by Petitioner's sentencing court any pertinent Sentencing Commission policy statements)

---

error allowed for rounding up and factoring in the effect of leap year, if applicable.

[3] The Court's calculation indicate that, if 73 days are a ten percent figure, Petitioner's sentence, after being decreased by good time credits, is about 23 months and two weeks.

[4] To illustrate the same mathematically, if Petitioner's sentence serving as the basis for calculation is less than 23.5 months, e.g., if it is 18 months, than 73 days are more than ten percent of that amount (<u>i.e.</u>, 73 days are about 13% of 18 months).

are qualitatively different from the issues stressed by Petitioner, that is, his desire to secure an employ and his need to save monies for a New York residence. See Woodall, 432 F.3d at 244. Rather, it appears that Petitioner is relying on § 3624(c), providing that the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." However, no statement made in Section 3624(c) automatically entitles Petitioner to a six-month CCC period.

VII. That said, this Court cannot rule out the possibility that the consideration given to Petitioner's transfer to CCC failed to comport with the requirements of Section 3621(b). See Docket Entry No. 1, at 3 (where Petitioner states that his inquiry with his unit team members yielded a response consisting of purely mechanical calculations). However, even if this Court is to hypothesize that Petitioner's unit team members conveyed to Petitioner a decision obtained in violation of § 3621(b), such presumed fact cannot be read as indicative of the BOP's final decision to that effect. Indeed, no statement made in the Petition indicates that Petitioner's administrative appeal of the unit team members' decision was denied on the basis of

the same mechanical calculation. In fact, the Petition unambiguously indicates that, after his inquiry with his unit team members, Petitioner did *not* seek any administrative review but rather filed the instant Petition. See id.

VIII. A federal prisoner ordinarily must exhaust his administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241"). If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may "require the petitioner to exhaust his administrative remedies before proceeding in court," i.e., **to present petitioner's claims to the warden of the facility having custody over the petitioner, then, if unsatisfied with the warden's response, to the petitioner's Regional Office of BOP and, if the petitioner is also unsatisfied with the response of the Regional Office, to the National Inmate Appeal.** Ridley v. Smith, 2006 U.S. App. LEXIS 11127, at *2-3 (3d Cir. May 3, 2006) (quoting Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), abrogated in part on other grounds by Reno v. Koray, 515 U.S. 50 (1995), and Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989)). While the exhaustion

requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts.  See Moscato, 98 F.3d at 761 (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); cf. Granberry v. Greer, 481 U.S. 129 (1987) (stating that exhaustion is not a jurisdictional requirement but that of comity); Rose v. Lundy, 455 U.S. 509, 515-18 (1982) (same). Indeed, a proper administrative exhaustion ensures the opportunity of the agency to correct the alleged wrong complaint about and, in addition, enables the petitioner to accumulate proper record for examination of the reviewing district court. Therefore, the Court "[sh]ould allow Petitioner's Petition to proceed [without having Petitioner satisfy the exhaustion requirement only if] enforcement of exhaustion requirement [would render the remedy that might be later obtained from the Court] futile . . ." by the mere passage of time.[5]  Dilorenzo v. Fed. Bureau

---

[5]

Here, Petitioner asserts that his projected release date is January 29, 2009, which means that his transfer to a CCC is

of Prisons, 2006 U.S. Dist. LEXIS 33514, at *3 (D.N.J. May 15, 2006).

IX. Here, it appears obvious that Petitioner did not exhaust his remedies. See Docket Entry No. 1, at 3.  Therefore, the instant Petition should be dismissed as unexhausted.

**IT IS on this 23rd day of April 2008,**

**ORDERED** that the 28 U.S.C. § 2241 Petition is DISMISSED for failure to exhaust administrative remedies;[6] and it is further

**ORDERED** that the Clerk shall change the name of Defendant in this action from "J. Grondolksy" to "J. Grondolsky" to reflect the caption utilized in the Petition; and it is finally

**ORDERED** that the Clerk shall serve Petitioner with a copy of this Order by means of regular U.S. mail and close the file in this matter.

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**

---

currently anticipated to take place around mid-November of 2008. Therefore, Petitioner has ample time to seek an administrative review, collect complete administrative record of responses he would obtain at every level of the BOP and, if necessary, obtain this Court's review of these administrative decisions.

[6] The Court reminds Petitioner that such dismissal is "without prejudice" and, if Petitioner exhausts his administrative remedies and, upon conclusion of such exhaustion, still believes that his rights were violated, noting prevents Petitioner from filing another § 2241 petition.